**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BLACKLICK HOTSPOT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:21-cv-138 |
| | ) | |
| v. | ) | District Judge Horan |
| | ) | Magistrate Judge Lenihan |
| MANSFIELD OIL COMPANY OF | ) | |
| GAINESVILLE, INC.; and EMPIRE | ) | ECF Nos. 4, 11 |
| PETROLEUM PARTNERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss or, Alternatively, Motion to

Transfer Venue filed by Defendants Mansfield Oil Company of Gainesville, Inc. (ECF No. 4)

and Empire Petroleum Partners, LLC (ECF No. 11) be granted and that this civil action be

transferred to the United States District Court for the Northern District of Georgia, Gainesville

Division.

II.    REPORT

A.    Relevant Factual Allegations and Procedural Background

This civil action in diversity arises out of the alleged breach of commercial agreements

entered into by Plaintiff, Blacklick Hotspot Corp. ("Blacklick")[1] and Defendant Mansfield Oil

Company of Gainesville, Inc. ("Mansfield")[2].  Blacklick is the owner of certain real property

located in Blacklick, Pennsylvania, Indiana County (the "Property").  Complaint, ECF No. 1-1 at

---

[1] Plaintiff Blacklick is incorporated in Pennsylvania with an office located in Pittsburgh, Pennsylvania.
[2] Defendant Mansfield is a corporation incorporated in Georgia with its principal place of business located in
Gainesville, Georgia.

21 ¶ 5.  Prior to its acquisition of the Property in 2011, Blacklick identified Mansfield as a potential partner in a business venture to establish a convenience store and gas station at the Property.  *Id.* at 21 ¶ 6.  On February 1, 2012, Plaintiff Blacklick entered into a Retail Marketing Agreement and Special Purpose Lease (collectively "the Agreements") with Defendant Mansfield.  *Id.* at 21 ¶ 7.  The Special Purpose Lease Agreement provided that Mansfield would, *inter alia*, install, maintain and operate on the Property its own fuel dispensing equipment.  *Id.* at 21 ¶ 8.  Under the Retail Marketing Agreement, Blacklick agreed to market and sell Mansfield's gasoline and fuel, in exchange for a division of the net proceeds from the gasoline sales.  *Id.* at 22 ¶ 9 & Exhibit B to the Compl., ECF No. 1-1 at 65.

The Retail Marketing Agreement provides that *"[a]ll disputes shall be resolved in Hall County, Georgia*, and Marketer and any other Guarantor, signing below hereby *submits to the exclusive jurisdiction of the State and Superior Courts of Hall County, Georgia and hereby agrees that venue is proper in Hall County Georgia.*"  Exhibit B to Compl., ECF No. 1-1 at 81 (emphasis added).  The Special Purpose Lease Agreement provides that *"[a]ll disputes shall be resolved exclusively in Hall County, Georgia, and Lessor hereby submits to the jurisdiction of the courts of Hall County, Georgia and hereby agrees that venue is proper in Hall County, Georgia."*  Exhibit C to Complaint, ECF No. 1-1 at 97 (emphasis added).  Both Agreements state that they "shall be governed by the substantive laws of the State of Georgia, without reference to its conflicts of law provisions."  ECF No. 1-1 at 81 & 97.

Two years after the Agreements were executed, Defendant Mansfield sold its retailer operations to Defendant Empire Petroleum Partners, LLC ("Empire")[3].  As part of the

---

[3] Defendant Empire is a Delaware limited liability corporation ("LLC"), with its principal place of business in Dallas, Texas.  The parties do not dispute that the citizenship of the members of the LLC is completely diverse from Plaintiff.  *See generally Zambelli Fireworks Mfg., Co, Inc., v. Wood*, 592 F.3d 412 (3d Cir. 2010) (for purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of each of its members).

acquisition, Mansfield assigned its rights and obligations under the Agreements to Empire and Empire assumed those rights and obligations.  Compl. ECF No. 1-1 ¶ 14.  Plaintiff alleges that Defendants "breached the Agreements by failing and refusing to provide Blacklick financing and petroleum products as well as failing and refusing to install the fuel dispensing equipment at the Property . . . ."  *Id.* at 26 ¶ 33; *see also id.* at 25 ¶¶ 22-27.

Blacklick instituted its original civil action by filing a Praecipe for Issuance of Writ of Summons on August 11, 2020 in the Court of Common Pleas of Indiana County, Pennsylvania.  ECF No. 1-1 at 3-7.  The Complaint was docketed on December 24, 2020.  ECF No. 1-1 at 18.  The Complaint contains three counts against Mansfield and Empire: Count I for Breach of Contract; Count II for Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing; and Count III for Fraud in the Inducement.  In Count III for Fraud in the Inducement, Plaintiff alleges that in entering into the Agreements, Defendants "warranted and represented to Plaintiff that they fully intended to proceed with the proposed convenience store and gas station project on the Property with Plaintiff and would, to the extent necessary, provide the necessary financing for the acquisition of the required fuel dispensing equipment."  ECF No. 1-1 at 28 ¶ 40.  On January 29, 2021, Mansfield filed a Notice of Removal to this Court.  ECF No. 1.  Empire joined in that Notice on February 5, 2021.  ECF No. 9.

Defendants Mansfield and Empire now file their respective Motions to Dismiss, or Alternatively, to Transfer Venue.  ECF Nos. 4 & 11.  The Defendants argue, *inter alia*, that because of the mandatory forum selection clauses in both Agreements, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6) where a forum selection clause specifies only a non-federal forum as the appropriate venue.  Alternatively, the Defendants argue that

pursuant to United States Supreme Court precedent, 28 U.S.C. § 1404 (a) provides a mechanism

for transfer where a forum selection clause points to a particular federal district.[4]

B.      Legal Standards

The United States Court of Appeals for the Third Circuit summarized the standard to be

applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the
> Federal Rules of Civil Procedure, a plaintiff must come forward
> with "a short and plain statement of the claim showing that the
> pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556
> U.S. 662, 678 (2009), a claimant must state a "plausible" claim for
> relief, and "[a] claim has facial plausibility when the pleaded factual
> content allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." Although "[f]actual
> allegations must be enough to raise a right to relief above the
> speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
> 555 (2007), a plaintiff "need only put forth allegations that raise a
> reasonable expectation that discovery will reveal evidence of the
> necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and
> citations omitted); *see also Covington v. Int'l Ass'n of Approved
> Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other

matters of which a court may take judicial notice, court orders, and exhibits attached to the

complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  *Oshiver v. Levin,*

*Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and

---

[4] The Court acknowledges the ambiguity presented by the Agreements in issue.  The Retail Marketing Agreement
states specifically that "[a]ll disputes shall be resolved in Hall County, Georgia, and Marketer and any other
Guarantor, signing below hereby *submits to the exclusive jurisdiction of the State and Superior Courts of Hall
County, Georgia and hereby agrees that venue is proper in Hall County Georgia.*" Exhibit B to Compl., ECF No. 1-
1 at 81 (emphasis added).  The Special Purpose Lease Agreement, however, is not so precise.  It states that *"[a]ll
disputes shall be resolved exclusively in Hall County, Georgia, and Lessor hereby submits to the jurisdiction of the
courts of Hall County, Georgia and hereby agrees that venue is proper in Hall County, Georgia."*  Exhibit C to
Complaint, ECF No. 1-1 at 97 (emphasis added).  Under this provision in the Special Purpose Lease Agreement,
venue is arguably appropriate in the United States District Court for the district and division encompassing Hall
County, Georgia, as well as the state courts in Hall County, Georgia.

Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)).   A court may also consider indisputably authentic documents.   *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publicly available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

In *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), the United States Supreme Court discussed the appropriate way to enforce a forum selection clause that designates a state or foreign forum.   The Court noted that the appropriate analysis is through the doctrine of *forum non conveniens*.   The Court further stated that 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."   *Atl. Marine*, 571 U.S. at 60 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

The *Atlantic Marine* court further noted that the *forum non conveniens* doctrine involving a nonfederal forum uses the same balancing of interests standard that is used to evaluate a forum-selection clause pointing to a federal forum pursuant to § 1404(a).   *Id*. at 61.   Moreover, "[w]hen the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.   Only under extraordinary circumstances

unrelated to the convenience of the parties should a § 1404 (a) motion be denied." *Id.* at 62 (footnote omitted).

Specifically, when a valid forum-selection clause is at issue, the district court is required to adjust its usual § 1404(a) analysis in three ways. First, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. That is, "when a plaintiff agrees by contract to bring suit only in a specified forum— presumably in exchange for other binding promises by the defendant[,]" the plaintiff has exercised its privilege of choosing a forum and must carry the burden of demonstrating why the court should not transfer the case to the agreed upon forum.[5] *Id.* at 63-64.

Second, a district court evaluating a motion for *forum non conveniens* or a § 1404 (a) motion to transfer based upon a forum selection clause should not consider arguments about the parties' private interests. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation." *Id.* at 64. Therefore, the private interest factors must weigh entirely in favor of the previously selected forum and the court should consider public interest factors only. *Id.* Examples of public interest factors include "the administrative difficulties flowing from court congestion; [and] the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 64 & n.6 (internal quotations and citations omitted).

---

[5] In the absence of a forum selection clause, a defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing a plaintiff's selected forum because of the harsh result of dismissal, and in some circumstances, the running of the statute of limitations. But where a valid forum selection clause is in play, the burden shifts to a plaintiff because "the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum selection clause. In such a case, dismissal would work no injustice on the plaintiff." *Atl. Marine*, 571 U.S. at 66 n.8.

"Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

Finally, the *Atlantic Marine* court indicated that in the face of a valid forum selection clause, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65-66.  The Atlantic Marine court noted:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

571 U.S. at 66.

C.    Analysis

Preliminarily, on May 21, 2021, the Plaintiff filed a Suggestion of Bankruptcy indicating that it had commenced a Chapter 11 bankruptcy proceeding on May 3, 2021.  ECF No. 26. Thereafter, the Court ordered a telephone conference with counsel to discuss the impact of Plaintiff's bankruptcy filing on the instant civil action.  ECF No. 27.  Plaintiff and Defendant Mansfield then submitted briefing at ECF Nos. 29, 30 and 31.  Defendant Mansfield contends that the action presently before the Court is a non-core proceeding and that Plaintiff's bankruptcy has no impact on venue.  ECF Nos. 29 & 31.  Plaintiff appears to concede that this action is "related to" the bankruptcy, that is, it is a non-core proceeding, but that venue is appropriate in this Court pursuant to 11 U.S.C. § 1409.  Pl.'s Reply Brief, ECF No. 30 at 4 ("Hence, it is quite clear, that the federal district court can maintain venue over a proceeding that is related to a case pending under title 11 in the same district even though the Bankruptcy Court in which such case

is proceeding could not exercise jurisdiction over it as a 'non-core' 'related to' matter."). The language quoted in Plaintiff's brief (ECF No. 30 at 3) is found at 28 U.S.C. § 1409(a) rather than at 11 U.S.C. § 1409. 28 U.S.C. § 1409(a) provides in relevant part as follows: "Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 *may* be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a) (emphasis added). Plaintiff's reliance on this provision is misplaced, however, in that this venue statute is permissive in nature, and does not require that non-core proceedings be brought in the same judicial district where Plaintiff's bankruptcy case is pending. *See In re Fleming Companies, Inc.*, 444 B.R. 1278 (D. Del. 2011); *Brock v. American Messenger Service, Inc.*, 65 B.R. 670 (D.N.H. 1986).

Instead, venue in this civil action is controlled by the valid forum selection clauses found in the Agreements. Plaintiff does not challenge the validity of the forum selection clauses in issue. That is, Plaintiff does not contend that the forum selection clauses were procured by fraud or overreaching. *See, e.g., Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) (citation omitted). Plaintiff's allegation regarding fraud in this civil action is described in Count III of the Complaint: "Defendants in entering into the Agreements warranted and represented to Plaintiff that they fully intended to proceed with the proposed convenience store and gas station project on the Property with Plaintiff and would, to the extent necessary, provide the necessary financing for the acquisition of the required fuel dispensing equipment." ECF No. 1-1 at 28 ¶ 40. Plaintiff's fraud claim alleges only that Defendants failed to perform in accordance with the Agreements as Mansfield had promised.[6] Consequently, the parties have not placed the validity of the forum selection clauses in issue. *See MoneyGram Payment Sys., Inc. v. Consorcio*

---

[6] The Court offers no opinion on the merits of the claim set out in Count III of the Complaint.

*Oriental, S.A.,* 65 F. App'x 844, 847 (3d Cir. 2003) (quoting *Prima Paint Corp. v. Flood &*

*Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) ("[T]he mere allegation of fraudulent conduct

does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the

forum selection clause is the result of 'fraud in the inducement of the [forum-selection] clause

itself.'")). *See also McGrath v. Nationwide Mut. Ins. Co.,* 2:15cv222, 2016 WL 1237350, at *6

(W.D. Pa. March 30, 2016) (no fraud in the inducement of the forum selection clause itself);

*Patriot Com. Leasing Co., Inc. v. Kremer Rest. Enters., LLC,* 915 A.2d 647, 653 (Pa. Super. Ct.

2006) ("A forum selection clause can be avoided for fraud only when the fraud relates to the

procurement of the forum selection clause itself, standing independently from the remainder of

the agreement.").

Instead, Plaintiff's arguments concern the inconvenience it will sustain if this civil action

is transferred to Georgia.  It contends that compelling it to litigate in Georgia will result in

increased costs and expenses to the point that it will deny Plaintiff a remedy.[7]  It further argues

that the Property is located in Pennsylvania and that issues of Pennsylvania real property,

environmental, and landlord/tenant law come into play.  It continues that Georgia "has literally

no connection to the dispute between the parties . . . ."  ECF No. 18 at 7-8.  Of course, these are

all issues that would have been apparent to the parties at the time Plaintiff agreed to the forum

selection clauses especially as they concern Plaintiff's pursuit of any litigation.  But as discussed

above, the Court need only consider the public interest factors in the face of the forum selection

clause, and as noted in *Atlantic Marine*, these factors will rarely defeat a transfer motion.  *See*

*Atl. Marine*, 571 U.S. at 64.

---

[7] In response to this argument, Defendant Mansfield contends that this matter involves a dispute over "more than a minimal amount" and attaches the Docket sheet from Blacklick's Adversary Proceeding against Mansfield in the United States Bankruptcy Court for the Western District of Pennsylvania, Johnstown Division, at No. 20-7007-JAD where Blacklick asserted a demand of $3 Billion.  Mansfield Reply Brief, ECF No. 22 at 2 & ECF No. 22-1 at 1.

As noted above, examples of public interest factors include "the administrative difficulties flowing from court congestion; [and] the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 64 & n.6 (internal quotations and citations omitted).  Plaintiff does not touch on most of these factors, only that because the Property is located in Pennsylvania, there would be "an overwhelming public policy interest" in having the dispute resolved in Pennsylvania in terms of real property, environmental and landlord/tenant law.  With that, Plaintiff has failed to carry its heavy burden of demonstrating extraordinary circumstances necessary to defeat the operation of the forum selection clause.  As noted by Defendant Mansfield, "Plaintiff offers no legitimate argument that enforcement of the forum selection clauses violates any specific Pennsylvania public policy."  Mansfield's Reply Brief, ECF No. 22 at 3.  In fact, it is settled Pennsylvania law that parties are bound by the clear and unambiguous terms of a contract.  *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).  Moreover, both Agreements provide that Georgia law applies and the trial of this diversity case in a federal court in Georgia will certainly be "at home with the law." *See Atl. Marine,* 571 U.S. at 64 & n.6.

In light of the Court's analysis above and the mandatory language of the forum selection clauses that *all disputes* be resolved in Hall County, Georgia, the Court will not address the parties' arguments concerning dismissal of certain of Plaintiff's substantive claims, including those arguments relating to the statute of limitations, fraud in the inducement, and failure to attach a verification to the original state court complaint.

Finally, in light of the ambiguity of the forum selection clauses at issue as to whether the selected forum is in a state or federal court of Hall County, Georgia, the Court respectfully

recommends that the civil action be transferred to the United States District Court for the Northern District of Georgia, Gainesville Division, which is located in Hall County, Georgia.  As noted by the United States Court of Appeals for the Third Circuit, "it makes better sense, when venue is proper but the parties have agreed upon a non-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss."  *See Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001).

III.    CONCLUSION

For the reasons discussed above, it is respectfully recommended that the Motions to Dismiss or, Alternatively, Motion to Transfer Venue filed by Defendants Mansfield Oil Company of Gainesville, Inc. (ECF No. 4) and Empire Petroleum Partners, LLC (ECF No. 11) be granted and that this civil action be transferred to the United States District Court for the Northern District of Georgia, Gainesville Division.

In accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.


Dated: August 10, 2021

                                        BY THE COURT


                                        _____
                                        Lisa Pupo Lenihan
                                        United States Magistrate Judge